# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ERRAN G. EVANS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 12-0614** |
| **N. BURL CAIN** | **SECTION "C"(2)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the motion to stay be **DENIED** and the instant petition for habeas corpus relief be **DENIED** and **DISMISSED** in part for lack of jurisdiction and in part **WITH PREJUDICE** as time-barred.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

## I.     STATE COURT PROCEDURAL BACKGROUND

The petitioner, Erran G. Evans, is a convicted armed robber and killer currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2]  In violation of Rule 2(e) of the Rules Governing Section 2254 Cases, Evans has combined challenges to two convictions arising from separate criminal cases in the 24th Judicial District Court for Jefferson Parish, Louisiana.  The State is correct in objecting that this joint presentation is improper.  Rule 2(e) clearly provides: "A petitioner who seeks relief from judgments of more than one state court <u>must</u> file a separate petition concerning the judgment or judgments of each court."  Nevertheless, it is so clear that Evans is <u>not</u> entitled to federal habeas corpus relief from this court as to either conviction that I will address them together in this report and recommendation.

## A.     JEFFERSON PARISH CASE NO. 94-7025, ARMED ROBBERY

On December 16, 1994, Evans was charged by bill of information in Jefferson Parish case number 94-7025 with the armed robbery of Hewlit Adcock.[3]  The relevant facts as determined at trial were summarized by the Louisiana Fifth Circuit Court of Appeal as follows:

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 17, Bill of Information, No. 94-7025, 12/16/94.

On the morning of November 19, 1994, Hewlit Adcock, III, arrived at his place of employment, H.J.M. Sheet Metal Shop, which was located in Jefferson Parish. He "opened up the building" leaving a crack in the bay doors and "punched in" his time of arrival. A black male, later identified as the defendant in this case, opened the door and entered the building. When Adcock asked him if he needed assistance, the defendant "backed out" the door and Adcock followed him.

Outside of the building, the defendant asked Adcock if he wanted to sell his car and Adcock stated that it was not for sale. The defendant then asked if he could use the telephone and Adcock led him to the office where the telephone was located. The defendant used the telephone, but apparently was unable to reach the person whom he was calling. When the defendant exited the office, Adcock slammed the door; whereupon, the defendant produced a pistol said, "Don't make me pop a cap on you, man," and instructed Adcock to unlock the door to the office.

After the two men entered the office, the defendant again said, "Don't make me pop a cap on you." The defendant then forced Adcock to lie down on the floor of the office and he asked him where "petty cash" and the safe were located. Upon removing Adcock's wallet, the defendant said, "That's all you have, thirty dollars?" and Adcock responded that he had two fifty dollar bills "in there." The defendant returned the wallet to Adcock who located the two bills and handed the wallet back to the defendant. When the defendant subsequently placed the wallet down, Adcock's spare key fell out of it.

Thereafter, the defendant tied Adcock's hands behind his back with a phone cord and he asked him if he had a key to the desk. After Adcock stated that he did not have a key, the defendant emptied Adcock's pockets and took the cash which he found in his right pocket. The defendant then removed Adcock's belt and used it to bind his legs. After pulling the telephone out of the wall, the defendant fled the scene in Adcock's car. Subsequently, Adcock managed to free himself and he went "next door" to report the robbery to the police.

State v. Evans, 684 So.2d 92 (La. App. 5th Cir. 1996) (Table); St. Rec. Vol. 1 of 17,

Louisiana Fifth Circuit Court of Appeal Opinion, 96-KA-374, November 26, 1996.

Evans was tried by a jury on April 24 and 25, 1995, and was found guilty as charged of armed robbery.[4] On May 3, 1995, the state trial court sentenced Evans to serve 99 years in prison without benefit of parole, probation or suspension of sentence.[5] Evans also entered a plea of not guilty to the multiple bill filed that day by the State.[6] Later, on August 30, 1995, the state trial court adjudicated Evans a third felony offender and resentenced him to serve 198 years in prison without benefit of parole, probation, or suspension of sentence.[7]

In the meantime, on June 22, 1995, the court granted Evans an out of time appeal, in which his appointed counsel raised three errors to the Louisiana Fifth Circuit:[8] (1) The habitual offender sentence imposed was excessive. (2) The trial court erred by restricting the cross-examination of the detective during the motion to suppress. (3) The trial court failed to notify him of the delays for seeking post-conviction relief.

---

[4]St. Rec. Vol. 1 of 17, Trial Minutes, 4/24/95; Trial Minutes, 4/25/95; Jury Verdict, 4/25/95; St. Rec. Vol. 10 of 17, Trial Transcript, 4/24/95; St. Rec. Vol. 9 of 17, Trial Transcript, 4/25/95; Transcript of Arguments, 4/25/95.

[5]St. Rec. Vol. 1 of 17, Sentencing Minutes, 5/3/95; St. Rec. Vol. 9 of 17, Sentencing Transcript, 5/3/95.

[6]St. Rec. Vol. 1 of 17, Minute Entry, 5/3/95; Multiple Bill, 5/3/95.

[7]St. Rec. Vol. 1 of 17, Multiple Bill Sentencing Minutes, 8/30/95; St. Rec. Vol. 9 of 17, Multiple Bill Hearing Transcript, 8/30/95.

[8]St. Rec. Vol. 1 of 17, Trial Court Order, 6/22/95; Motion for Out of Time Appeal, 6/21/95; St. Rec. Vol. 9 of 17, Appeal Brief, 96-KA-374, 8/9/96.

The Louisiana Fifth Circuit affirmed the conviction on November 26, 1996, finding no merit to the first two issues.[9]  The court remanded the matter in part for the trial court to notify Evans of the delays for filing for post-conviction relief.  The state trial court complied with the remand by order issued on March 17, 1997.[10]

Evans's conviction, nevertheless, became final 30 days after the Louisiana Fifth Circuit's ruling, on December 26, 1996, when he did not seek rehearing or timely review in the Louisiana Supreme Court.[11]  Butler v. Cain, 533 F.3d 314 (5th Cir. 2008) (citing Roberts v. Cockrell, 319 F.3d 690, 694-95 (5th Cir. 2003) (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process)).

Almost three years later,[12] on December 14, 1999, Evans submitted an application for post-conviction relief in the state trial court in which he raised five grounds for

---

[9]State v. Evans, 684 So.2d at 92; St. Rec. Vol. 1 of 17, 5th Cir. Opinion, 96-KA-374, 11/26/96.

[10]St. Rec. Vol. 1 of 17, Trial Court Order, 3/17/97.

[11]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a), Evans had 30 days from the issuance of the Louisiana Fifth Circuit's opinion to file a timely writ application in the Louisiana Supreme Court, which he did not do.

[12]I recognize that during that three years, Evans filed several requests for copies of record documents, and when denied, he also sought mandamus review in the Louisiana Fifth Circuit and/or the Louisiana Supreme Court.  See e.g., St. Rec. Vol. 1 of 17, St. Rec. Vol. 15 of 17, 5th Cir. Order, 97-KH-360, 4/30/97; 5th Cir. Writ Application, 97-KH-360, 4/17/97; 5th Cir. Order, 98-KH-524, 6/8/98; 5th Cir. Writ Application, 98-KH-524, 5/20/98 (dated 5/18/98); 5th Cir. Order, 98-KH-664, 7/28/98; 5th Cir. Writ Application, 98-KH-664, 6/22/98 (dated 6/18/98); State ex rel. Evans v. State, 706 So.2d 974 (La. 1998); St. Rec. Vol. 17 of 17, La. S. Ct. Order, 97-KH-2280, 1/16/98; La. S. Ct. Writ Application, 97-KH-2280, 9/8/97 (dated 9/2/97). For reasons discussed later in this report and recommendation, these pleadings have no impact on the timeliness calculation.

relief:[13] (1) The conviction was obtained by use of evidence obtained through unconstitutional search and seizure. (2) The conviction was obtained after an unlawful arrest. (3) His privilege against self-incrimination was violated. (4) The prosecution failed to disclosed favorable evidence. (5) He received ineffective assistance of counsel.

The state trial court denied the application on January 20, 2000, finding that Evans's third claim was without merit.[14] The court also held that Evans was procedurally barred from raising the first and second claims, which should have been raised on direct appeal.[15] In addition, the fourth claim was found to be a veiled attempt to obtain a copy of the trial transcript to search for errors and otherwise did not state a cognizable error. Finally, the court determined that the fifth claim, ineffective assistance of counsel, was without merit under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984). Evans did not seek review of this order.

Four months later, on May 19, 2000, Evans submitted an application for writ of mandamus to the Louisiana Fifth Circuit, seeking an order directing the state trial court

---

[13]St. Rec. Vol. 1 of 17, Uniform Application for Post Conviction Relief, 12/29/99 (dated 12/14/99).

[14]St. Rec. Vol. 1 of 17, Trial Court Order, 1/20/00.

[15]Under La. Code Crim. P. art. 930.4, a claim is barred from post-conviction review if it could have been or was raised on direct appeal.

to provide him with the January 20, 2000 order on his application for post-conviction relief.[16]  The court ordered the trial court to provide the copy.[17]

On June 7, 2000, the en banc law clerk at the state trial court wrote a letter to the Louisiana Fifth Circuit informing the court that the order was served on Evans at the Orleans Parish Prison.[18]  Another copy was sent to him by certified mail pursuant to the appellate court's order.[19]

In spite of this, Evans wrote a letter to the state trial court on July 10, 2000, asking for a copy of the January 20, 2000 order.[20]  On July 25, 2000, the state trial court issued an order denying his request after noting the prior mailings of the order by the court.[21]

Undaunted, Evans submitted another writ application to the Louisiana Fifth Circuit on October 9, 2000, suggesting that the state trial court had not complied with the court's prior order to provide him with the January 20, 2000 order.[22]  The court denied the

---

[16]St. Rec. Vol. 15 of 17, 5th Cir. Writ Application, 00-KH-1119, 5/30/00 (dated 5/19/00).  Evans erroneously referred to it as the January 21, 2000 order.

[17]St. Rec. Vol. 15 of 17, 5th Cir. Order, 00-KH-1119, 6/2/00.

[18]St. Rec. Vol. 1 of 17, Letter to Fifth Circuit, 6/7/00.

[19]Id.; St. Rec. Vol. 1 of 17, Letter to Evans, 6/7/00.

[20]St. Rec. Vol. 1 of 17, Letter to Court, 7/17/00 (dated 7/10/00).  Evans again erroneously referred to the order as the January 21, 2000 order.

[21]St. Rec. Vol. 1 of 17, Trial Court Order, 7/25/00.

[22]St. Rec. Vol. 15 of 17, 5th Cir. Writ Application, 00-KH-1651, 10/12/00 (dated 10/9/00). Evans again erroneously referred to the order as the January 21, 2000 order.

application as moot, referencing the trial court's July 25, 2000 order.[23]  Evans did not file

a writ application seeking review of the underlying denial of his post-conviction

application.

Eight years later, on July 17, 2008, Evans submitted a writ application to the

Louisiana Supreme Court seeking reconsideration of his prior pro se writ applications

filed with the Louisiana Fifth Circuit, related to both Case Nos. 94-7025 and 95-467,

under the holding in State v. Cordero, 993 So.2d 203 (La. 2008).[24]  Per the Cordero

procedures, this writ application was transferred to the Louisiana Fifth Circuit.[25]  The

court later denied Evans's petition for rehearing on February 20, 2009, without stated

reasons.[26]  The United States Supreme Court also denied Evans's related application for

writ of certiorari on October 5, 2009.[27]

---

[23]St. Rec. Vol. 15 of 17, 5th Cir. Order, 00-KH-1651, 10/13/00.

[24]St. Rec. Vol. 16 of 17, La. S. Ct. Writ Application, 08-KH-1886, 8/7/08 (dated 7/17/08).  The Cordero court addressed the alleged procedural improprieties and summary dismissal without judicial review of pro se post-conviction writ applications filed in that court over a period of time.

[25]State ex rel. Evans v. State, 993 So.2d 1218 (La. 2008); St. Rec. Vol. 16 of 17, La. S. Ct. Order, 2008-KH-1886, 10/10/08 (issued in connection with both 94-7025 and 95-467).  The Cordero court directed that writs with questionable review history be transferred to the Louisiana Fifth Circuit for reconsideration.

[26]State ex rel. Evans v. State, 1 So.3d 478 (La. 2009); St. Rec. Vol. 16 of 17, La. S. Ct. Order, 2008-KH-1886, 2/20/09; Rehearing Application, 08-KH-1886, 6/4/09.

[27]Evans v. Louisiana, 130 S. Ct. 244 (2009); St. Rec. Vol. 1 of 17, U.S. S.Ct. Notice, 09-5304, 10/5/09; La. S. Ct. Letter, 2008-KH-1886, 11/9/09.

On January 19, 2011, the Louisiana Fifth Circuit denied relief on Evans's <u>Cordero</u> review of his prior pro se writ applications.[28] Evans thereafter submitted an application seeking review of that ruling in the Louisiana Supreme Court on February 14, 2011.[29] The Louisiana Supreme Court denied the application without stated reasons on December 16, 2011.[30]

## B.    JEFFERSON PARISH CASE NO. 95-467, SECOND DEGREE MURDER

On January 26, 1995, Evans and a co-defendant, Fenesha Blunt, were indicted by a Jefferson Parish grand jury for first degree murder.[31] The indictment was amended on March 16, 1995, to charge both defendants with second degree murder.[32] The relevant facts as determined at trial were summarized by the Louisiana Fifth Circuit Court of Appeal as follows:

> In the early morning of December 1, 1998, Fenesha Blunt was walking on the side of Airline Highway, in Metairie, Louisiana, when the victim, Reverend [John Henry] Thomas, drove up beside her in his Cadillac. Upon observing the Cadillac, the defendant, who was walking on the opposite side of the highway, approached the driver's side of the

---

[28]St. Rec. Vol. 17 of 17, 5th Cir. Order, 08-WR-1037, 1/19/11; St. Rec. Vol. 15 of 17, 5th Cir. Writ Application, 08-WR-1037, 10/18/08.

[29]St. Rec. Vol. 17 of 17, La. S. Ct. Writ Application, 11-KH-344, 2/18/11 (dated 2/14/11).

[30]<u>State ex rel. Evans v. State</u>, 76 So.3d 1197 (La. 2011); St. Rec. Vol. 17 of 17, La. S. Ct. Order, 201-KH-0344, 12/16/11.

[31]St. Rec. Vol. 11 of 17, Indictment, 95-467, 1/26/95; St. Rec. Vol. 3 of 17, Grand Jury Return, 1/26/95.

[32]<u>Id.</u>, handwritten amendment, 3/16/95.

Cadillac and negotiated with Reverend Thomas regarding sexual services which Blunt could perform for him. Following these negotiations, the defendant and Blunt entered the Cadillac, and they drove to a nearby Exxon gas station.

The defendant exited the Cadillac at the Exxon station to buy a beverage, and after purchasing a beer, the defendant returned to the vehicle and instructed Ms. Blunt to move to the front seat. He also advised Ms. Blunt that Reverend Thomas wanted to "turn a date" with her. After Blunt moved to the front seat with Reverend Thomas, the two of them drove off leaving the defendant at the Exxon station.

Thereafter, Reverend Thomas parked his Cadillac in the 3100 block of Lauset Street, which was approximately two blocks away from the Exxon station. After he paid Blunt $20.00, they moved to the back seat. Blunt then engaged in sexual intercourse with Reverend Thomas and she also performed fellatio upon him. When Reverend Thomas exited the vehicle, Blunt heard a gunshot, and she observed the defendant walking out "from behind the car door" holding a .380 caliber pistol. Upon exiting the vehicle, she saw Reverend Thomas laying on the ground. The defendant and Blunt then departed the scene in the Cadillac leaving the body of Reverend Thomas laying on the side of the road. They eventually proceeded to their residence and parked the Cadillac five or six blocks away from it.

Reverend Thomas' body was discovered later that morning, and an examination of the body disclosed a fatal gunshot wound to his back.

Later that evening the defendant and Blunt returned to the Cadillac and discovered that the battery had been stolen. As the defendant was attempting to install another battery in the vehicle, Deputy Robert Murphy, who was responding to a report of abandoned vehicle, arrived on the scene. As Deputy Murphy began questioning the defendant and Blunt, he received a radio broadcast reporting that the Cadillac may have been involved in a homicide earlier that day. When Deputy Murphy confirmed that the license plate number matched that of the victim's vehicle, he ordered the defendant and Blunt to place their hands on the vehicle, and he requested the assistance of other officers. Shortly thereafter, Detective Jarrod Gervais arrived on the scene, and his pat-down search of Blunt revealed a .380 caliber pistol. Subsequently, a 9 millimeter pistol was found underneath a refrigerator approximately 10 feet in front of the Cadillac.

The defendant and Blunt were arrested and transported to the Detective Bureau. Blunt then gave two recorded statements implicating the defendant as the perpetrator of the murder. The defendant also gave a recorded statement; however, he implicated Blunt as the perpetrator.

After giving her statements, Blunt asked if she could speak (sic) the defendant, and the defendant and Blunt were allowed to speak alone in the interview room. Detective James Wright and Detective Philip overheard their conversation in which the defendant told Blunt to "take the charge." Thereafter, Blunt approached Detective Wright and told him that she murdered Reverend Thomas; however, within minutes she recanted that admission.

State v. Evans, 712 So.2d 941, 942-43 (La. App. 5th Cir. 1998); St. Rec. Vol. 3 of 17, Louisiana Fifth Circuit Court of Appeal Opinion, 97-KA-1030, April 15, 1998.

The indictment was amended a second time on September 27, 1995, to reduce the charge against co-defendant Blunt to armed robbery.[33] She entered a guilty plea and was later sentenced to 30 years without benefit of parole, probation or suspension of sentence.[34]

Evans was tried by a jury on May 22, 23, 27, and 28, 1997, and was found guilty as charged of second degree murder.[35] On July 16, 1997, the state trial court sentenced

---

[33]Id., handwritten amendment, 9/27/95.

[34]St. Rec. Vol. 4 of 17, Minute Entry (Blunt), 10/23/96.

[35]St. Rec. Vol. 11 of 17, Trial Minutes, 5/22/97; Trial Minutes, 5/23/97; Trial Minutes, 5/27/97; Trial Minutes, 5/28/97; Jury Verdict, 5/28/97; St. Rec. Vol. 12 of 17, Trial Transcript, 5/23/97; Trial Transcript, 5/27/97; St. Rec. Vol. 13 of 17, Trial Transcript (continued), 5/27/97; Trial Transcript, 5/28/97; St. Rec. Vol. 14 of 17, Supplemental Trial Transcript, 5/23/97; Supplemental Trial Transcript, 5/28/97.

him to life imprisonment without benefit of parole, probation or suspension of sentence.[36] The trial court also denied Evans's motion for a new trial.[37]

Evans appealed his conviction through appointed counsel to the Louisiana Fifth Circuit Court of Appeal raising three errors:[38] (1) The trial court erred by admitting other crimes evidence. (2) The trial court erred in refusing to suppress his statements. (3) The evidence was insufficient to support a conviction of second degree murder. The appellate court affirmed the conviction on April 15, 1998, but amended the sentence to include credit for time served.[39] The case was also remanded in part for the trial court to notify Evans of the delays for filing for post-conviction relief.[40]

Evans's conviction became final 30 days later, on May 15, 1998, when he did not seek rehearing or timely review in the Louisiana Supreme Court.[41] Roberts, 319 F.3d at 694-95 (an appeal is final when the state defendant does not timely proceed to the next available step in an appeal process).

_____

[36]St. Rec. Vol. 11 of 17, Sentencing Minutes, 7/16/97; St. Rec. Vol. 13 of 17, Sentencing Transcript, 7/16/97.

[37]Id.

[38]St. Rec. Vol. 13 of 17, Appeal Brief, 97-KA-1030, 12/23/97.

[39]State v. Evans, 712 So.2d at 941; St. Rec. Vol. 11 of 17, 5th Cir. Opinion, 97-KA-1030, 4/15/98.

[40]Id.

[41]Pursuant to La. Code Crim. P. art. 922(C) and La. S. Ct. R. X§5(a), Evans had 30 days from the issuance of the Louisiana Fifth Circuit's opinion to file a timely writ application in the Louisiana Supreme Court, which he did not do.

Almost three months later, on August 3, 1998, Evans's counsel filed an application for leave to file an out-of-time writ application in the Louisiana Supreme Court.[42]  On December 18, 1998, the court issued an order stating that the application was "[n]ot considered.  Not timely filed."[43]

Almost two years later, on June 30, 2000, Evans submitted an application for post-conviction relief in the state trial court raising three grounds for relief:[44] (1) He was denied a fair trial because of the erroneous admission of other crimes evidence. (2) He was denied effective assistance of counsel before, during and after his trial. (3) The evidence at trial was insufficient to support his conviction for second degree murder. The state trial court denied the application on July 25, 2000, finding that the claims had been addressed on appeal and found meritless and that the application sought untimely post-conviction relief.[45]

Evans had two related writ applications in the Louisiana Fifth Circuit Court of Appeal.  In No. 00-KH-1643, the court denied mandamus relief because the state trial

---

[42]St. Rec. Vol. 16 of 17, La. S. Ct. Writ Application, 98-K-2088, 8/3/98.

[43]State v. Evans, 731 So.2d 276 (La. 1998); St. Rec. Vol. 16 of 17, La. S. Ct. Order, 98-K-2088, 12/18/98.

[44]St. Rec. Vol. 6 of 17, Uniform Application for Post Conviction Relief, 7/5/00 (dated 6/30/00).

[45]St. Rec. Vol. 6 of 17, Trial Court Order, 7/25/00.  Under La. Code Crim. P. art. 930.8, as it was written at the time, Evans had three years from finality of his conviction to file a timely application for post-conviction relief.

court had already ruled on the application for post-conviction relief on July 25, 2000.[46]

The court, on October 25, 2000, in No. 00-KH-1678 ordered the state trial court to

provide Evans with a copy of its July 25, 2000, ruling.[47]

Eventually, on January 30, 2001, Evans submitted another writ application to the

Louisiana Fifth Circuit seeking review of the trial court's June 25, 2000 order.[48]  The

court denied the application, finding no error in the trial court's order.[49]

More than two years later, on September 27, 2002, Evans submitted another

application for post-conviction relief to the state trial court raising three grounds for

relief:[50] (1) His constitutional rights were violated because the indictment was fatally

defective and he was not properly informed of the statutory elements of the offense. (2)

A racially discriminatory system of selecting the grand jury foreperson violated the Fifth,

Sixth and Fourteenth Amendments. (3) Counsel was ineffective for failure to challenge

the discriminatory practices of appointing grand jury forepersons.  On October 15, 2002,

---

[46]St. Rec. Vol. 15 of 17, 5th Cir. Order, 00-KH-1643, 10/10/00 (dated 10/4/00); 5th Cir. Writ Application, 00-KH-1643, 10/10/00 (dated 10/4/00).

[47]St. Rec. Vol. 15 of 17, 5th Cir. Order, 00-KH-1678, 10/25/00; 5th Cir. Writ Application, 00-KH-1678, 10/23/00 (dated 10/17/00).

[48]St. Rec. Vol. 15 of 17, 5th Cir. Writ Application, 01-KH-146, 2/7/01 (dated 1/30/01).

[49]St. Rec. Vol. 15 of 17, 5th Cir. Order, 01-KH-146, 2/8/01.

[50]St. Rec. Vol. 7 of 17, Application for Post Conviction Relief, 10/2/02 (dated 9/27/02).

the trial court denied the application as repetitive of Evans's prior application for post-conviction relief.[51]

Evans sought review of that ruling in the Louisiana Fifth Circuit on November 12, 2002.[52] The appellate court denied the application on December 3, 2002, finding no error in the trial court's ruling.[53] Evans's subsequent writ application in the Louisiana Supreme Court was denied without reasons on January 30, 2004.[54]

More than four years later, on July 17, 2008, Evans submitted his writ application to the Louisiana Supreme Court seeking relief under Cordero, 993 So.2d at 203, with respect to both Case Nos. 94-7025 and 95-467.[55] As outlined previously, per the Cordero procedures, this writ application was transferred to the Louisiana Fifth Circuit.[56] The court later denied Evans's petition for rehearing on February 20, 2009, without stated

---

[51]St. Rec. Vol. 7 of 17, Trial Court Order, 10/15/02.

[52]St. Rec. Vol. 15 of 17, 5th Cir. Writ Application, 02-KH-1145, 11/20/02 (dated 11/12/02).

[53]St. Rec. Vol. 15 of 17, 5th Cir. Order, 02-KH-1145, 12/3/02.

[54]State ex rel. Evans v. State, 865 So.2d 64 (La. 2004); St. Rec. Vol. 16 of 17, La. S. Ct. Order, 2003-KH-0019, 1/30/04; La. S. Ct. Writ Application, 03-KH-0019, 1/3/03 (dated 12/11/02).

[55]St. Rec. Vol. 16 of 17, La. S. Ct. Writ Application, 08-KH-1886, 8/7/08 (dated 7/17/08).

[56]State ex rel. Evans v. State, 993 So.2d at 1218; St. Rec. Vol. 16 of 17, La. S. Ct. Order, 2008-KH-1886, 10/10/08 (issued in connection with both 94-7025 and 95-467).

reasons.[57]  The United States Supreme Court also denied Evans's related application for writ of certiorari on October 5, 2009.[58]

On January 19, 2011, the Louisiana Fifth Circuit denied relief on Evans's <u>Cordero</u> review.[59]  The Louisiana Supreme Court thereafter denied Evans's related application without stated reasons on December 16, 2011.[60]

Six months later, on May 8, 2012, Evans submitted a third application for post-conviction relief to the state trial court alleging that La. Code Crim. P. art. 442 was illegal and unconstitutional.[61]  The state trial court denied the application as untimely under La. Code Crim. P. art. 930.8 and successive under La. Code Crim. P. art. 930.4.

The Louisiana Fifth Circuit denied Evans's subsequent writ application on August 16, 2012, finding no error in the dismissal under La. Code Crim. P. arts. 930.4 and

---

[57]<u>State ex rel. Evans v. State</u>, 1 So.3d at 478; St. Rec. Vol. 16 of 17, La. S. Ct. Order, 2008-KH-1886, 2/20/09; Rehearing Application, 08-KH-1886, 6/4/09.

[58]<u>Evans v. Louisiana</u>, 130 S. Ct. at 244; St. Rec. Vol. 1 of 17, U.S. S.Ct. Notice, 09-5304, 10/5/09; La. S. Ct. Letter, 2008-KH-1886, 11/9/09.

[59]St. Rec. Vol. 17 of 17, 5th Cir. Order, 08-WR-1037, 1/19/11; St. Rec. Vol. 15 of 17, 5th Cir. Writ Application, 08-WR-1037, 10/18/08.

[60]<u>State ex rel. Evans v. State</u>, 76 So.3d at 1197; St. Rec. Vol. 17 of 17, La. S. Ct. Order, 201-KH-0344, 12/16/11; La. S. Ct. Writ Application, 11-KH-344, 2/18/11 (dated 2/14/11).

[61]St. Rec. Vol. 15 of 17, Uniform Application for Post-Conviction Relief, 5/15/12 (dated 5/8/12). Article 442 addressed the type of evidence that is to be heard by a grand jury in Louisiana.

930.8.[62]  The record does not reflect that Evans sought further review in the Louisiana Supreme Court.

## II.    THE PRIOR FEDERAL HABEAS PETITION

On February 16, 2004, Evans submitted a federal petition for a writ of habeas corpus in this court, challenging his conviction for second degree murder in Jefferson Parish Case No. 95-467.[63]  He raised three grounds for relief: (1) His constitutional rights were violated because the indictment was fatally defective and he was not informed of the statutory elements of the crime charged. (2) A racially discriminatory system of selecting the grand jury foreperson violated the Fifth, Sixth and Fourteenth Amendments. (3) He was denied effective assistance of counsel for failure to challenge the discriminatory practices of appointing the grand jury foreperson.

As the assigned magistrate judge, I issued a report on July 7, 2004, recommending that Evans's petition be dismissed with prejudice as time-barred.[64]  By order issued March 8, 2005, the district judge rejected Evans's objections, adopted the report and recommendation and dismissed the petition with prejudice as time-barred.[65]  Judgment

---

[62]St. Rec. Vol. 15 of 17, 5th Cir. Order, 12-KH-537, 8/16/12; 5th Cir. Writ Application, 12-KH-537, 6/29/12 (dated 6/26/12).

[63]Civ. Action No. 04-0649"C"(2), Rec. Doc. No. 1.

[64]Id., Rec. Doc. No. 9.

[65]Id., Rec. Doc. No. 13.

accordingly was issued on March 11, 2005.[66]  The United States Fifth Circuit Court of

Appeals denied issuance of a certificate of appealability on February 22, 2006.[67]

III.    THE CURRENT FEDERAL HABEAS PETITION

On April 14, 2012, Evans filed the instant federal habeas corpus petition

challenging his convictions in both Jefferson Parish Case No. 94-7025 and No. 95-467,

raising the following grounds:[68] (1) The procedure adopted by the Louisiana Fifth Circuit

Court of Appeal in 1994 for addressing pro se post-conviction writ applications, which

was address in the Louisiana Supreme Court's Cordero opinion, violated the Fourteenth

Amendment and the Louisiana Constitution. (2) The Louisiana Fifth Circuit denied him

due process and equal protection when they denied his motion to recuse the judges of that

court on the Cordero reconsideration of his prior writ applications.

The State filed a response in opposition to Evans's petition arguing that the

petition as it relates to Jefferson Parish Case No. 95-467 is a prohibited second or

successive petition and is otherwise untimely filed.[69]  The State also argues that the

petition was not timely filed with respect to his challenge to Jefferson Parish Case No.

---

[66]Id., Rec. Doc. No. 14.

[67]Id., Rec. Doc. No. 24.

[68]Rec. Doc. No. 3.

[69]Rec. Doc. No. 15.

94-7025.  Alternatively, the State argues that the claims do not present a cognizable federal issue and are otherwise meritless.

IV.   MOTION TO STAY

Evans filed a motion seeking a stay in this federal habeas corpus proceeding pending exhaustion of his state court remedies.[70]  Evans does not offer any explanation or argument to support the one-line motion.  My review of the state court records reflects that Evans has exhausted the issues related to his Cordero review in the state courts and the State does not challenge exhaustion in its response.

Evans's motion invokes 28 U.S.C. § 2251.  However, this appears to be an inapplicable statute.  Section 2251 allows a federal judge "before whom a habeas corpus proceeding is pending" the power to stay a state court proceeding "for any matter involved in the habeas corpus proceeding." 28 U.S.C. § 2251(a)(1); McFarland v. Scott, 512 U.S. 849, 857 (1994).  The statute provides that, upon granting the stay, any further state court proceeding is void.  28 U.S.C. § 2251(b).  Evans, however, is not seeking this type of relief.  As discussed above, his recent post-conviction proceedings in the state courts, through the Louisiana Supreme Court, have been resolved. He has cited no pending state court proceeding for this court to stay.  Evans, instead, seems to seek leave

---

[70]Rec. Doc. No. 12.

to return to the state courts to exhaust claims and a stay of this federal proceeding to allow him to do so.

In <u>Pliler v. Ford</u>, 542 U.S. 225, 227 (2004), the Supreme Court addressed the availability of a stay-and-abeyance in connection with "mixed petitions" containing both exhausted and unexhausted claims. <u>Id.</u> The <u>Pliler</u> Court ultimately reiterated the long-standing directive that a mixed petition be dismissed without prejudice to require exhaustion. <u>Id.</u> at 233. The Supreme Court recognized that a petitioner has two choices when faced with dismissal of a mixed petition: (1) return to the state courts to exhaust his claims in full; or (2) amend or resubmit his petition to raise only exhausted claims in the federal district court. <u>Id</u>.

The Supreme Court later held that stay-and-abeyance was an extraordinary remedy <u>not</u> to be made readily available to a habeas petitioner. <u>Rhines v. Weber</u>, 544 U.S. 269, 278 (2005). The <u>Rhines</u> Court cautioned that a stay-and-abeyance "should be available only in <u>limited</u> circumstances," and is appropriate <u>only</u> when the district court determines that there was "good cause" for the failure to exhaust. <u>Id</u>. at 277 (emphasis added). Stays are improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay." <u>Id</u>.

In this case, Evans has not presented this court with a mixed petition. The two claims asserted in his habeas petition appear to have been exhausted, and exhaustion is

not challenged by the State. This distinguishes his petition from the type of mixed petition addressed in Pliler/Rhines.

Furthermore, Evans has not presented any good cause for this court to enter a stay. A stay to allow for completion of exhaustion must be limited to instances in which good cause is shown for the failure fully to exhaust. Rhines, 544 U.S. at 278. Evans has failed to show any good cause or any sound basis to issue a stay in this case. His motions to stay should be denied.

## V. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[71] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Evans's petition, which, for reasons discussed below, is deemed filed in this court on February 8, 2012.[72]

---

[71]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[72]The United States Court of Appeals for the Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

In the instant case, the State contends that Evans's petition is not timely filed with respect to either of his state convictions. Although I find that the petition is not timely filed under the AEDPA and should be dismissed for that reason, I am compelled first to address the State's contention that the petition is a second or successive petition as it relates to his second degree murder conviction in Case No. 95-467, which has already been the subject of a previous habeas petition in this court.

## VI.    LACK OF JURISDICTION OVER A SECOND OR SUCCESSIVE FEDERAL PETITION RELATED TO CASE NO. 95-467

28 U.S.C. §§ 2244(b)(1) and (2) provide for the dismissal of any new or previously raised claim presented in a second or successive Section 2254 habeas corpus petition. Like other circuits, the United States Fifth Circuit Court of Appeals has

---

(2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Evans's petition was filed by the clerk of court on April 10, 2012, when the filing fee was received after denial of his pauper application. Evans dated his signature on the petition on February 8, 2012. This is the earliest date on which he could have delivered the petition to prison officials for mailing. The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

recognized that the AEDPA did not define the phrase "second or successive" found in

Section 2244. For guidance, the United States Fifth Circuit has turned to pre-AEDPA

law defining those same terms under Rule 9(b) of the Rules Governing Section 2254

Cases:

> Section 2244(b) does not define "second or successive" petition. The
> specific language in the Act is derived from Rule 9(b), Rules Governing
> Section 2254 Cases, 28 U.S.C. foll. § 2254, which states that "[a] second
> or successive petition may be dismissed if . . . it fails to allege a new or
> different grounds for relief and the prior determination was on the merits
> or, if new and different grounds are alleged, . . . the failure of the petitioner
> to assert those grounds in a prior petition constituted an abuse of the writ."
> Although the AEDPA's amendment to § 2244 imposes stricter
> requirements for "second or successive" petitions than the pre-AEDPA
> "abuse of the writ" standard in Rule 9(b), <u>nothing in the AEDPA affects the
> determination of what constitutes a "second or successive" petition.</u>

In re Gasery, 116 F.3d 1051 (5th Cir. 1997) (emphasis added) (citation omitted).

The Fifth Circuit has made it clear that under AEDPA "a prisoner's application

is not second or successive simply because it follows an earlier federal petition." <u>In re

Cain</u>, 137 F.3d 234, 235 (5th Cir. 1998). Instead, the court has consistently held that an

adjudication on the merits is necessary before a subsequent petition is considered

"second or successive." <u>Graham v. Johnson</u>, 168 F.3d 762 (5th Cir. 1999) ("Under

current law, however, it is clear that an application filed after a previous application was

<u>fully adjudicated on the merits</u> is a second or successive application within the meaning

of 28 U.S.C. § 2244(b), even if it contains claims never before raised." (emphasis

added)), cert. denied, 529 U.S. 1097 (2000); accord Barrientes v. Johnson, 221 F.3d 741 (5th Cir. 2000)(when prior petition is dismissed without prejudice, subsequent filing is not successive) (citing Slack v. McDaniel, 529 U.S. 473 (2000) (subsequent filing not successive when prior filing was dismissed without prejudice)), cert. dism., 531 U.S. 1134 (2001).

Under this standard, the Fifth Circuit has held that a later-filed petition is prohibited when it: "1) raises a claim challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition; or 2) otherwise constitutes an abuse of the writ." In re Cain, 137 F.3d at 235. This provision has been described as a "modified res judicata rule" that bars claims ripe for disposition at the time the original petition was filed, but which were inexcusably not raised in that earlier petition. United States v. Orozco-Ramirez, 211 F.3d 862, 868-871 (5th Cir. 2000); Graham, 168 F.3d at 774 n.7 (citing Felker v. Turpin, 518 U.S. 651, 655-58, 662-63 (1996)). Such claims are deemed second or successive. Id. Thus, the Fifth Circuit has indicated that the focus of the inquiry is on whether the petitioner received an adjudication on the merits of his claims in the prior petition.

A review of this court's records reflects that Evans's prior federal petition was dismissed with prejudice as untimely under the AEDPA. Although a dismissal based on the statute of limitations does not include an examination of the merits of the underlying

substantive claims presented in the petition, such a dismissal is considered an adjudication of the merits for purposes of determining whether a subsequent petition is a prohibited second or successive under the AEDPA. See In re Flowers, 595 F.3d 204, 205 (5th Cir. 2009) (per curiam) (deeming a petition successive where prior federal petition was dismissed with prejudice as time barred); Manuel v. Director, TDCJ-CID, No. 08-483, 2011 WL 6816073, at *2 (E.D. Tex. Oct. 10. 2011); see also, Mathis v. Laird, 457 F.2d 926, 927 (5th Cir.), cert. denied, 409 U.S. 871 (1972) ("A ruling based on the statute of limitations is a decision on the merits for res judicata purposes."); Guyton v. United States, 23 Fed. Appx. 539, 540 (7th Cir. 2001) (dismissal of a habeas petition "because the district court determined, albeit erroneously, that it was not filed within the applicable statute of limitations . . . operates to dispose of the case on the merits as much as an erroneous finding that a petitioner had failed to state an element of a claim."); Reyes v. Vaughn, 276 F. Supp.2d 1027, 1029 (C.D. Cal. 2003) (previous dismissal based on the statute of limitations "is considered an adjudication of the merits for purposes of determining whether a subsequent petition is successive under AEDPA.").

Thus, Evans's petition, as it relates to Case No. 95-467, is unquestionably a second or successive petition as defined under Section 2244(b). Before the petition can be addressed as to the second degree murder conviction, Evans is required to obtain

authorization to file this second or successive petition from the Fifth Circuit in accordance with 28 U.S.C. § 2244(b)(3)(A), which provides in part: "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." Evans has not sought or obtained this authorization. Until such time as he obtains the authorization, this court is without jurisdiction to proceed. See Mead v. Cain, 438 Fed. Appx. 340, 341 (5th Cir. 2011) (citing United States v. Key, 205 F.3d 773, 774 (5th Cir. 2000)).

In the interest of justice, a district court may transfer a petition under 28 U.S.C. § 1631 to resolve its jurisdiction. In In re Epps, 127 F.3d 364 (5th Cir. 1997), the Fifth Circuit adopted a specific procedure to be employed when a successive habeas petition is transferred from a district court under Section 1631 for consideration as a request for authorization and to cure the jurisdictional question. In re Epps implies that the transfer of successive habeas corpus petitions to the Fifth Circuit for consideration under Section 2244 is proper, as opposed to dismissal.

Section 2244(b)(2), however, allows for the dismissal of successive claims and petitions that do not meet the particular exceptions listed therein. Furthermore, the Federal Rules of Civil Procedure also direct that "[i]f the court determines at any time

that it lacks subject-matter jurisdiction, the court <u>must</u> dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

The circumstances of this case convince me that dismissal rather than the transfer under <u>In re Epps</u> is the appropriate result in this case. As discussed above, Evans's first petition was dismissed as time-barred. This second petition is time-barred by an even greater margin than before. Just as this court resolved in his prior federal habeas case, his conviction was final on May 15, 1998, and the AEDPA statute of limitations expired one year later, on Monday, May 17, 1999. Evans had no state post-conviction or other collateral review pending during that time period.

In addition, Evans has presented claims in this petition that challenge not his conviction and sentence, but the procedures involved in the state post-conviction review process as addressed by the Louisiana Supreme Court in <u>Cordero</u>. Based on the procedural history I have outlined above, Evans did not engage in the state post-conviction process until June 30, 2000, which was more than two years after his state conviction was final, and more than one year after the AEDPA statute of limitations had lapsed. Any infirmities in that process would not impact the timeliness calculation. <u>See Lane v. Rogers</u>, 2012 WL 3159656, at *3 (E.D. La. Aug. 2, 2012). Furthermore, the claims arising from the post-conviction process raised by Evans in this petition are not cognizable on federal habeas review. <u>Hallmark v. Johnson</u>, 118 F.3d 1073, 1080 (5th

Cir. 1997) ("infirmities in state habeas proceedings do not constitute grounds for relief in federal court.").

In addition, Evans violated Rule 2(e) of the Rules Governing Section 2254 Cases by presenting claims challenging two separate convictions in this same federal petition. As discussed below, the petition is also clearly untimely as to his armed robbery conviction in Case No. 94-7025 and must be dismissed with prejudice for that reason. Rather than transfer part of the case and dismiss part of the case, the interests of clarity and judicial economy require dismissal of the entire petition. Evans's claims as to both of his convictions are so clearly time-barred that the burden should be placed upon him to pursue authorization from the Fifth Circuit as to the successive claims arising from his murder conviction in Case No. 95-467 in a separate and appropriate manner should he choose to do so.

This court previously determined more than seven (7) years ago that Evans's habeas challenge to his murder conviction is time-barred. Under these circumstances, and because Evans's petition is in part a prohibited second or successive petition for which he has not obtained the required circuit court authorization, and because he has improperly combined challenges to two separate convictions in the same petition, I recommend dismissal of the petition in part insofar as it relates to his murder conviction

for lack of jurisdiction, so that the burden may properly be imposed upon Evans to obtain

authorization to pursue it, if he can.

VII.    STATUTE OF LIMITATIONS RELATED TO CASE NO. 94-7025

The AEDPA requires a petitioner to bring his Section 2254 petition in most cases

within one year of the date his conviction became final.[73]  Duncan v. Walker, 533 U.S.

167, 179-80 (2001).  Evans's armed robbery conviction in Case No. 94-7025 was final

on Thursday, December 26, 1996.  Thus, under a literal application of the statute, Evans

had one year from the date his conviction became final, or until Friday, December 26,

1997, to file his federal habeas corpus petition, which he did not do.  His petition must

be dismissed as untimely, unless the one-year statute of limitations period was

---

[73]The statute of limitations provision of the AEDPA at 28 U.S.C. § 2244(d), provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--

A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or

D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Cantu-Tzin v. Johnson, 162 F.3d 295, 299 (5th Cir. 1998); Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999). Equitable tolling is warranted only in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. Pace, 544 U.S. at 418-19; Cousin v. Lensing, 310 F.3d 843, 848 (5th Cir. 2002).

Evans has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and my review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent. See Holland v. Florida, 130 S. Ct. 2549, 2574-75 (2010) (equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period

of years in spite of the client's letters); <u>Hardy v. Quarterman</u>, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); <u>United States v. Wynn</u>, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); <u>Coleman v. Johnson</u>, 184 F.3d 398, 402 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); <u>Fisher</u>, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); <u>Cantu-Tzin</u>, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); <u>Davis</u>, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

I also reiterate that the <u>Cordero</u> issues raised in this case arise from post-conviction proceedings in the Louisiana Fifth Circuit. Evans did not pursue post-conviction relief as to this conviction until December 24, 1999. As discussed below, this was two years

after the AEDPA statute of limitations expired for this conviction. There is no basis for equitable tolling of an expired limitations period. Lane, 2012 WL 3159656, at *3.

In addition to equitable tolling, however, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas

petition. <u>Dillworth v. Johnson</u>, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); <u>Nara v. Frank</u>, No. 99-3364, 2001 WL 995164, at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. <u>Godfrey v. Dretke</u>, 396 F.3d 681, 686-88 (5th Cir. 2005). Requests for document and transcript copies also are not other collateral review for purposes of the tolling calculation. <u>Osborne v. Boone</u>, 176 F.3d 489, 1999 WL 203523 (10th Cir. Apr. 12, 1999) (Table, Text in Westlaw) (motion for transcript copies is not "other collateral review" for tolling purposes); <u>Brown v. Cain</u>, 112 F. Supp.2d 585, 587 (E.D. La. 2000), <u>aff'd</u>, 239 F.3d 365 (5th Cir. 2000); <u>Gerrets v. Futrell</u>, No. 01-3080, 2002 WL 63541 (E.D. La. Jan. 16, 2002) (Vance, J.); <u>Jones v. Johnson</u>, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); <u>Grayson v. Grayson</u>, 185 F. Supp.2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

The one-year limitations period began to run as to Evans's armed robbery conviction on December 27, 1996, the day after his conviction became final. The limitations period ran uninterrupted for 365 days, until December 26, 1997, when it expired. Evans had no properly filed state court post-conviction or other collateral review proceedings pending during that period.[74]

Evans did not even begin his pursuit of post-conviction relief in the state trial court until December 14, 1999, almost two years after the limitations period had already expired. Evans then allowed another eight (8) years to pass between the conclusion of his post-conviction efforts in 2000, and the submission of his Cordero writ application in the Louisiana Supreme Court on July 17, 2008.

Evans's federal habeas corpus petition is deemed filed on February 8, 2012, more than 14 years after the expiration of the one-year statute of limitations period allowed under the AEDPA. For this reason, Evans's petition must be dismissed as untimely under 28 U.S.C. § 2244(d)(1)(A).

## RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Erran G. Evans's motion to stay (Rec. Doc. No. 12) be **DENIED**.

---

[74]As outlined previously, Evans only had pleadings related to document copy requests pending in the state courts during that period. Under the decisions cited above, this type of request does not constitute state post-conviction or other collateral review proceedings for tolling purposes.

It is further **RECOMMENDED** that the petition of Erran G. Evans for issuance

of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED** for

lack of jurisdiction as it relates to Jefferson Parish Case No. 95-467 (murder) and **WITH**

**PREJUDICE** as time-barred under the AEDPA as it relates to Jefferson Parish Case No.

94-7025 (armed robbery).

A party's failure to file written objections to the proposed findings, conclusions,

and recommendation in a magistrate judge's report and recommendation within fourteen

(14) days after being served with a copy shall bar that party, except upon grounds of

plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court, provided that the party has been served

with notice that such consequences will result from a failure to object.  Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[75]

New Orleans, Louisiana, this ____5th____ day of November, 2012.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[75]Douglass referenced the previously applicable ten-day period for the filing of objections.
Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.